**John CHAMBERLAIN, Plaintiff–Appellee,**

v.

**COCOLA ASSOCIATES, L.A. Packing and Crating, Inc., Defendants– Appellants.**

No. 90–56196.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided March 3, 1992.

Robert Hess, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendants-appellants.

Eric J. Emanuel, Quinn, Emanuel & Urquhart, Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER, LEAVY and FERNANDEZ, Circuit Judges.

SCHROEDER, Circuit Judge:

This diversity case arises out of a dispute over ownership of a large and valuable piece of sculpture originally designed for display over the bar of a downtown Los Angeles restaurant. The dispute is between the sculptor of the piece, plaintiff-appellee John Chamberlain, and the operators of the restaurant, appellant, Cocola Associates. Chamberlain brought this action to regain possession of the sculpture.

This case presents an issue of first impression concerning the interpretation of California's Civil Code section 988 which provides that where there is a conveyance of certain rights to a work of art, the ownership of the work of art is not thereby also conveyed unless there is a writing, signed by the artist or owner, explicitly conveying title. The district court ruled

that section 988 in effect created a statute of frauds requiring a writing for any transfer of the ownership of a work of art. Because the district court determined that there was no writing transferring ownership of the sculpture from the artist to the restaurant owners, the district court ruled that the ownership remained in the artist, Chamberlain, and entered judgment in his favor.

Cocola now appeals. It maintains that in fact, the ownership was transferred to it in return for acquisition by Chamberlain's son of a fifty percent stock interest in the 9 Palms Corporation, the general partner of Cocola. Cocola disputes Chamberlain's contention that he merely loaned the sculpture to the restaurant. Cocola contends that the district court erred as a matter of law in holding that the California statute requires a writing in order for there ever to be a lawful sale of a work of art. It argues that the statute is designed to apply only where there is a transfer of the intangible rights covered by the copyright laws. It contends the statute operates to insure only that when there is a transfer of intangible rights, the ownership interest remains in the artist or owner unless there is a written conveyance of ownership. Since in this case, according to Cocola, there was an outright sale, there was no transfer of intangible rights and the statute never came into play. Cocola also contends that if the district court properly interpreted the California statute, then it is preempted by provisions of federal law which authorize oral agreements for sale of works of art. Cocola reads such authorization into the open-ended language of section 202 of the Copyright Act which allows property rights to be conveyed along with copyrights only by agreement. *See* 17 U.S.C. § 202.

We do not reach the preemption issue, for we conclude that Cocola is correct in its interpretation of the California statute, and that section 988 was not intended to create a statute of frauds requiring a writing for there to be a sale of any work of art in California. The ultimate resolution of this ownership dispute depends on whether the parties did in fact intend a transfer of ownership as Cocola contends, or whether

Chamberlain loaned the sculpture to the restaurant, as the artist contends. Because there is conflicting evidence on this issue, we remand for further consideration by the district court.

The California statute in question provides in pertinent part:

(b) Whenever an exclusive or nonexclusive conveyance of any right to reproduce, prepare derivative works based on, distribute copies of, publicly perform, or publicly display a work of art is made by or on behalf of the artist who created it or the owner at the time of the conveyance, ownership of the physical work of art shall remain with and be reserved to the artist or owner, as the case may be, unless such right of ownership is expressly transferred by an instrument, note, memorandum, or other writing, signed by the artist, the owner, or their duly authorized agent.

(c) Whenever an exclusive or nonexclusive conveyance of any right [listed in (b) occurs] ... any ambiguity with respect to the nature or extent of the rights conveyed shall be resolved in favor of the reservation of rights by the artist or owner, unless in any given case the federal copyright law provides to the contrary.

Cal.Civ.Code § 988.

On its face, the statute appears to leave ownership rights in the owner or artist only where there is an express transfer of more limited rights. The statute does not, on its face, require a writing in order to transfer ownership rights any time physical possession of the object is transferred. The district court was persuaded, however, by Chamberlain's argument that the language of the statute literally says, when parsed, that ownership of the physical work of art is to remain with the artist "whenever [a] ... conveyance of any right to ... publicly display a work of art is made by ... the artist who created it ..." The district court concluded:

The defendants contend that the plaintiff transferred ownership of the sculpture as a capital contribution to the partnership on behalf of his son. If so, in-

cluded in the ownership so transferred is the right to display publicly the sculpture; but in order for such transfer to be effective, a writing is required. In other words, I believe the text of section 988(b) clearly constitutes a statute of frauds that covers the transfer of the art object here concerned.

The district court was faced with a record in which it was not clear whether the defendant restaurateurs were correct in their assertion that a total transfer of ownership was intended, or whether the plaintiff was correct that only a loan was intended. The parties made no written memorial of what interest was being transferred. Faced with this "ambiguity" in the facts, the district court resolved the ambiguity in favor of the artist as, in its view, being more consistent with the legislative intent as reflected in subsection (c) of section 988 which provides that when there is an ambiguity, it should be resolved in favor of the artist. This conclusion, however, has both textual and practical difficulties.

The textual difficulty with the district court's conclusion is that if the statute were intended to create a writing requirement for sale of art objects, the initial limiting clause, stating the circumstances in which a writing is required, would have been unnecessary. The practical problem with the district court's interpretation is that it calls into question the validity of countless sales of art objects that, according to uncontested affidavits in this record, are routinely conducted over a handshake.

To help resolve the issue we turn to the legislative history. This clearly supports Cocola's position that the writing requirement was established for the situation in which the parties engage in a transfer of reproduction rights, not a sale or loan of the object itself. The California Senate sponsor of the bill which enacted section 988, recommended that the Governor sign the bill in a 1982 letter describing the purpose of the statute as follows:

SB 1937 concerns a problem brought to my attention by commercial artists. Existing law contains no provisions reserv-

ing ownership of the physical work of art by the artist when reproduction rights are conveyed.

I am informed by commercial artists that they have in some instances lost ownership of their works of art when selling reproduction rights without intending this result and without being paid an additional fee. State law does not require a *written* transfer of ownership of the work of art. Thus, when reproduction rights are sold, a situation is created in which there is frequently no meeting of the minds between the parties as to who owns the work itself. Under present law this ambiguity concerning the transfer of the work of art itself must be resolved in a legal action.

SB 1937 would provide that absent a written agreement to the contrary, ownership of the work of art would remain with the artist whenever reproduction rights are sold.

Letter of Alan Sieroty dated Sept. 2, 1982 (emphasis added). The law, according to this history, was intended to prevent a person who obtains any of the five enumerated rights in a work of art to claim that by purchasing or acquiring one or more of those rights, the purchaser has acquired title to the art object itself. It was not intended to bar all oral agreements of sale. Nor was it intended to bar a court, in a dispute like this over an oral transaction, from determining the true intent of the parties.

Our interpretation is further buttressed by examination of the federal copyright laws which govern transfers of reproduction rights. 17 U.S.C. § 204 requires that transfers of copyright ownership be in writing. Section 204 provides in part:

(a) A transfer of copyright ownership, other than by operation of law,[1] is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed....

A copyright entitles the owner to rights enumerated in 17 U.S.C. § 106. These parallel precisely the types of transfers set

_____

1. One example of a transfer by operation of law     is the transfer of display rights which accompa-

forth in section 988 that trigger the writing requirement. Section 106 reads:

> Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) *to reproduce* the copyrighted work in copies or phonorecords;
>
> (2) *to prepare derivative* works based upon the copyrighted work;
>
> (3) *to distribute copies* or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to *perform* the copyrighted work *publicly;* and
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, *to display the copyrighted work publicly.*

17 U.S.C. § 106 (emphasis added).

Thus, when the California statute is read in conjunction with the federal copyright law and the California statute's own legislative history, the most reasonable interpretation of the California statute is that where there is an express, written conveyance of one or more of the limited rights listed in it, there can be no accompanying transfer of ownership unless the transfer of ownership is also in writing. Section 202 of the Copyright Act provides that a transfer of ownership of one of those rights does not convey property rights in the object itself. The section states:

> [N]or, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright [i.e., the right to display the copyrighted work publicly] convey prop-

erty rights in any material object [i.e., the work of art, itself].

17 U.S.C. § 202. California's section 988 simply refines this requirement to direct that there be not merely an agreement, but a written agreement before a transfer of property rights may accompany a transfer of copyright rights. Since in this case we are not dealing with any written transfer of copyright rights, there is no requirement under the California statute for a written memorandum of sale of the underlying property rights to the object itself.

The district court was correct, however, in its observation that whether or not there was a sale or a loan could not be determined on the state of the record before the court at the time it entered judgment. Accordingly, we remand for further findings in order to resolve that dispute.

REVERSED AND REMANDED.

---

nies the transfer of ownership of the material object per § 109(c). Note that this right does *not* automatically follow the rental, lease or loan of an object. 17 U.S.C. § 109(d).