Lawrence L. PASKO, Plaintiff,

v.

AMERICAN NATIONAL CAN
COMPANY, Defendant.

No. 1:97 CV 0408.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 23, 1998.

Scott D. Curtis, David Joseph Horvath, Brecksville, OH, for Plaintiff.

Patrick Francis Haggerty, Daniel R. Warren, Michael N. Chesney, Thompson, Hine & Flory, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon the Motion for Summary Judgment (Document # 12) filed by Defendant American National Can Company (hereinafter ANC). For the reasons that follow, Defendant's Motion is GRANTED.

### Factual Background

Mr. Pasko began working for a predecessor of ANC in 1957. It is unclear from the record when ANC took over the operations of its predecessor and became the Plaintiff's employer. However, Mr. Pasko worked a total of thirty-nine years in various positions with the company at its Cleveland facility, where ANC manufactures flexible packaging for the food, personal care, and pharmaceutical industries. Mr. Pasko began his employment as a machine operator, he later became a research technician, and in 1975 he became a shift supervisor, a position he held until his termination in 1996.

ANC utilizes a rating system to evaluate the performance of its employees. As part of this process an employee's performance is rated as one of the following: Outstanding (...consistently exceeded performance requirements...); Exceeds (...frequently exceeded performance requirements...); Meets (...met and occasionally exceeded performance requirements...); Fair (...did not fully meet performance requirements...); or Unsatisfactory (... met few, if any, performance requirements...). The performance evaluation documents advise that employees at the unsatisfactory level face corrective action if performance improvement is not observed within a short period of time.

From the early to mid–1990's, ANC eliminated a number of jobs due to economic conditions, but Mr. Pasko survived these cutbacks. During this same period, however, Mr. Pasko's performance began to decline and he received negative evaluations resulting in negative annual reviews. From 1991–1993, Mr. Pasko received ratings of "Meets" but during those three years his numerical rating declined within the "Meets" range. In 1994 his rating fell to "Fair." In 1995, Mr. Pasko's rating continued to decline and he received a rating of of "Unsatisfactory." A mid-year review in 1996 again resulted in an "Unsatisfactory" rating. Five different supervisors evaluated Mr. Pasko during this six-year period of declining reviews.

Due to the Plaintiff's continued unsatisfactory performance, Plant Manager Harry Askin terminated him in August 1996. At the time of his termination Mr. Pasko was fifty-seven years old. His position was filled by Jay Fishman who was forty years old at the time.

### Procedural History

Mr. Pasko initially filed a Complaint against ANC in Cuyahoga County Common Pleas Court, alleging that ANC unlawfully terminated him because of his age in violation of Ohio Revised Code Section 4112.02(N), and that this termination caused him to suffer economic, professional, and emotional damages. Defendant removed the case to this Court on February 20, 1997, and after receiving leave of Court, filed an Answer on March 25, 1997 in which ANC denied the allegations of discrimination contained in the Complaint.

ANC filed a Motion for Summary Judgment on December 3, 1997. Mr. Pasko filed a brief in opposition to ANC's Motion. Addi-

tionally, ANC filed a reply brief in support of its Motion and Mr. Pasko filed a surreply brief in opposition. The Motion for Summary Judgment and corresponding briefs are now before the Court.

## Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the

legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

██ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth

admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250.

## Discussion

■ The Supreme Court of Ohio has consistently held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio Civil Rights Comm. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994)(citing *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)). Therefore, the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a case alleging race discrimination in violation of federal law, has been utilized in cases alleging age discrimination in violation of Ohio law. *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 451 N.E.2d 807 (1983), modified by *Kohmescher v. Kroger Company,* 61 Ohio St.3d 501, 575 N.E.2d 439 (1991)(explaining that *Barker* prima facie test should be applied in only those situations where direct evidence of age discrimination is not readily discernible). Thus, in the absence of direct evidence, in order to establish a prima facie case of age discrimination in violation of Ohio law, a plaintiff must demonstrate:

> (1) that he was a member of the statutorily-protected class [1], (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class....

*Barker, supra,* at paragraph one of the syllabus.

■ Since the decision in *Barker, supra,* the United States Supreme Court has refined the prima facie test in cases alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* (hereinafter ADEA). Consequently, a plaintiff alleging a violation of the

---

1. For purposes of age discrimination, the protected class includes all persons forty years of age and older. *See,* OHIO REVISED CODE § 4112.01(14).

ADEA need not demonstrate that he or she was replaced by a person outside the protected class in order to demonstrate a prima facie case, rather the plaintiff must merely show that he or she was replaced by a person substantially younger than the plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ Nevertheless, the Supreme Court of Ohio has not altered its test under Ohio law in accordance with *O'Connor, supra.* Instead, the Supreme Court of Ohio has continued to apply the prima facie elements announced in *Barker, supra,* when considering a case of age discrimination under OHIO REVISED CODE Chapter 4112. *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 672 N.E.2d 145, 148 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2480, 138 L.Ed.2d 989 (1997).[2]

In this case, Mr. Pasko filed suit under Ohio law and did not allege a cause of action under the ADEA. Furthermore, the Plaintiff has not offered any direct evidence demonstrating age discrimination.[3] Furthermore, both parties' briefs argue in terms of whether or not the Plaintiff can demonstrate a prima facie case. Hence, Mr. Pasko's claim will be considered according to the *Barker* test.

Applying the elements of the *Barker* test to the facts of this case, there is no dispute that Mr. Pasko satisfies the first two prongs of the prima facie test because he was a member of a protected class and he was discharged from his employment at ANC. The parties disagree as to whether or not he can demonstrate the third or fourth elements.

■ The uncontradicted evidence before the Court indicates that at the time Mr. Pasko was terminated from his position, he was replaced by Mr. Fishman. Mr. Pasko alleges in his brief that Mr. Fishman was thirty-nine years old at that time, however, Mr. Pasko provides no authenticated evidence to support this contention, as required by FED.R.CIV.P. 56. In contrast, ANC contends that Mr. Pasko was not replaced by a person outside the protected class because Mr. Fishman was forty years old at the time he replaced Mr. Pasko. In support of this contention, ANC provided the affidavit of its Human Resources Manager, Mr. Gill, who attested to Mr. Fishman's date of birth. Therefore, because the only proper evidence before the Court demonstrates that Mr. Pasko was not replaced by a person outside the protected class, he cannot establish a prima facie case of age discrimination under Ohio law. The Plaintiff repeatedly argues that he satisfies this fourth element because he was replaced by a younger person. However, as explained *supra,* such a distinction is only relevant to the establishment of a prima facie case under the ADEA and not under Ohio law as alleged by the Plaintiff in his Complaint.

■ Even if Mr. Pasko had filed suit alleging a violation of the ADEA and could somehow satisfy the fourth element of the prima facie case, he still could not demonstrate a prima facie case under either federal or Ohio law because ANC has also presented sufficient evidence to demonstrate that Mr. Pasko was not qualified for the position. Despite numerous years of apparently dedicated service to ANC, the evidence reveals that Mr. Pasko's performance had been declining over the years before his termination, culminating in two "Unsatisfactory" ratings.

The Plaintiff's response does not deny that he received poor ratings in his reviews, but he charges that he had been unfairly evaluat-

---

**2.** The *Byrnes* decision may be considered non-binding legal precedent because only three justices concurred in the lead opinion, whereas two justices concurred in the judgment and two justices dissented. This fact notwithstanding, it is significant for purposes of this case, that all of the justices acknowledge the use of the *Barker* prima facie test, absent other evidence of discrimination.

**3.** Mr. Pasko argues that a list of employees and their ages, compiled by Human Resources Manager William Gill, shows age discrimination. However, the evidence demonstrates that Mr. Gill compiled the list as part of a separate reduction in force. More importantly, Mr. Askin made the decision to terminate the Plaintiff for his poor performance and there is no evidence—circumstantial or otherwise—to indicate that Mr. Askin was motivated by discriminatory intent.

ed by supervisors during those years. However, these allegations are unsupported by any proper evidence in accordance with FED. R.CIV.P. 56. Mr. Pasko did produce the affidavit of his co-worker Robert Smee wherein Mr. Smee avers that the Plaintiff is highly qualified for the position of shift supervisor. Nevertheless, whether or not an employee is qualified for his position requires evidence that the employee "was performing his job at a level which met his employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990). A plaintiff "does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors." *Id. See, Neubauer v. A.M. McGregor Home Corp.*, 1994 WL 197221 (Ohio App. 8 Dist.1994), unreported, (citing numerous decisions wherein courts applying Ohio law utilized the employer's legitimate expectations test in determining qualification). Consequently, Mr. Smee's judgment is irrelevant to a determination of whether or not Mr. Pasko was meeting ANC's expectations. Hence, because ANC has demonstrated that the Plaintiff did not meet its legitimate expectations and Mr. Pasko has failed to provide any proper evidence to the contrary, Mr. Pasko has failed to demonstrate the third prong of the prima face case.

■ Finally, it should be noted that even if Mr. Pasko could somehow demonstrate a prima facie case of age discrimination, he has failed to produce any evidence to indicate that ANC's reason for terminating him constitutes a pretext for age discrimination. Indeed the, evidence is to the contrary. The Plaintiff admits that he did not meet either ANC's or his supervisor's expectations. The Plaintiff's only response is that the poor evaluations were not fair. Significantly, five different supervisors evaluated him during these years of declining performance Thus, the record reveals that despite being given notice of his employer's dissatisfaction during his annual reviews and being provided the opportunity to improve, Mr. Pasko's performance grew consistently worse. Further vitiating any inference of age animus on the part of the Defendant is the fact that ANC retained Mr. Pasko during a reduction in force in the early 1990's, and terminated him only after declining performance resulted in two "Unsatisfactory" evaluations.

■ The Civil Rights laws relating to age discrimination have been implemented to protect older workers who are qualified for their positions and perform up to their employers' reasonable expectations. Conversely, although an employee may have contributed years of satisfactory service to an employer, the Civil Rights laws do not require an employer to abandon its objective evaluation criteria when faced with a long-term employee who exhibits declining productivity and consistently fails to perform to the level of his employer's legitimate expectations.

Therefore, the evidence demonstrates that no genuine issues of material fact remain to be litigated in this matter. Mr. Pasko cannot establish a prima facie case of age discrimination, nor demonstrate that the articulated reason for his termination constitutes a pretext for discrimination. Accordingly, ANC is entitled to judgment as a matter of law and Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.