Julius Sylvester WARREN, Plaintiff,

v.

SHELBY COUNTY, TENNESSEE, et al., Defendants.

No. 00–2644–BRE.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 30, 2001.

David P. Burlison, Jr., Michael L. Frayser, Memphis, TN, Counsel for Plaintiff.

Brian L. Kuhn, Memphis, TN, Kathleen Spruill, County Attorney's Office, Memphis, TN, Counsel for Defendants.

ORDER GRANTING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT OF DEFENDANTS SHELBY COUNTY, TENNESSEE AND SHERIFF A.C. GILLESS

BREEN, United States Magistrate Judge.

Before the court is the motion of defendants Shelby County, Tennessee and Sheriff A.C. Gilless pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, to dismiss or, in the alternative, for summary judgment.

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). Such motions are to be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Minger v. Green*, 239 F.3d 793, 797 (6th Cir.2001) (quoting *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996)). In making its determination, the court is to take all factual allegations contained in the complaint as true. *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir.1999). If matters outside the pleading are submitted to and considered by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b).

Rule 56(c) provides that a

... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on its pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a prepon-

derance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994).

This action, brought pursuant to 42 U.S.C. § 1983, was filed by Julius Warren, a former detainee at the Shelby County, Tennessee jail (the "Jail"), against Shelby County (the "County"); County Sheriff A.C. Gilless (the "Sheriff") in both his individual and official capacities; Marron Hopkins, Jail director; Jim Rout, mayor of the County;[1] Correctional Medical Services, Inc., a contract provider of medical services at the Jail ("CMS"); and Dr. Stipanuk, a medical doctor on the CMS staff.[2] The following facts are undisputed unless otherwise noted. Warren was injured in an automobile accident on June 5, 1999. Following the accident, he was examined at the Regional Medical Center (the "Med") in Memphis, Tennessee and later by Dr. Maurice Waller at Promedica Clinic P.C. and treated with pain medication and a back brace. On July 22, 1999, plaintiff was arrested and placed in the Jail. Upon his admission to the facility, he was evaluated by Dr. Stipanuk. Plaintiff alleges that, although he exhibited a severe lack of motor skills and complained of intense back pain, the physician dismissed his ailments as "foolishness" and instructed him to lose weight. He refused to perform

further diagnostic testing. Dr. Stipanuk also insisted plaintiff turn over to him his medication, which he dumped into the garbage while Warren looked on, and his back brace, which Warren was ultimately permitted to keep. According to the defendants, Warren appeared for his medical examination with bottles containing his own medications as well as the medication of others. The bottles were not labeled and the medications unidentifiable. Defendants further contend that the plaintiff refused to sign a medical records release form and was uncooperative. Plaintiff insists that, during the entire period of his incarceration at the Jail, which lasted until October 9, 1999, he requested medical treatment but none was provided. On the other hand, defendants have offered the deposition testimony of Vivian Ellis, plaintiff's assigned counselor at the Jail, in support of their contention that Warren made no additional requests for treatment during his detention. On or about October 9, 1999, Warren was transferred to the Shelby County Division of Corrections Penal Farm. Plaintiff alleges that, upon transfer, he again received a medical evaluation and this time was transported to the Med for diagnostic testing to determine the nature and source of his chronic back pain and lack of motor skills. Tests revealed that he suffered from a severely ruptured disk in the lower spine, for which he was treated with pain medication and steroids.

Warren alleges that the refusal of the Sheriff and other Jail and County officials to seek medical attention for him from July 22 through October 8, 1999 constituted deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments to the Constitution of

---

**1.** Defendants Hopkins and Rout were dismissed from this action pursuant to a consent order entered August 29, 2000.

**2.** The motion of Dr. Stipanuk and CMS to dismiss or, in the alternative, for summary judgment was denied by order of this court entered June 13, 2001.

the United States. In the instant motion, the Sheriff and the County argue that plaintiff has failed (1) to show that the Sheriff authorized the alleged failure to properly dispense medical care; (2) to identify a policy, custom, or usage that was the force behind the defendants' alleged actions; and (3) to demonstrate that the County or its agents or employees acted with deliberate indifference to his medical needs.

Title 42 U.S.C. § 1983 provides in pertinent part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to establish liability under § 1983, the plaintiff must show that (1) he was deprived of a right secured by the United States Constitution or the laws of the United States and (2) he was subjected or caused to be subjected to the constitutional deprivation by a person acting under color of state law. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978)).

The court will first address defendants' request for dismissal of plaintiff's claims against the Sheriff in his individual capacity. According to his response to the instant motion, Warren's allegations concerning the Sheriff focus on his direction of the County, which, along with CMS, failed to provide adequate attention to his medical needs. Supervisory liability under § 1983 attaches to an official in his individual capacity as a consequence of his own unconstitutional behavior. Liability "must be based on more than merely the right to control employees." *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989) (quoting *Hays v. Jefferson,* 668 F.2d 869, 872 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982)), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990).

[A] failure of a supervisory official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees].

*Id.* (citing *Hays,* 668 F.2d at 874) (alteration in original); *see also Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993), *reh'g denied* (July 1, 1993).

Plaintiff has alleged no affirmative act on the part of the Sheriff that violated his constitutional rights. Nor has he contended that the individual defendant implicitly authorized, approved or knowingly acquiesced in any failure by the medical personnel at the Jail to dispense treatment to Warren. Moreover, plaintiff has failed to offer any rebuttal whatsoever to defendants' motion to dismiss the individual claims against the Sheriff. Therefore, defendants' motion with respect to those claims is hereby GRANTED and plaintiff's action against Sheriff Gilless in his individual capacity is DISMISSED.

The court will next consider Warren's claims against the County and the Sheriff in his official capacity. The issue of the Sheriff's liability in his official capacity will be decided by the determination of the issue concerning the County's liability, as a § 1983 action against a municipal official in his official capacity is to be treated as an

action against the municipality itself. *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir.1992).

 Counties and other local governments are "persons" for purposes of § 1983. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). The Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2027, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). The finding of a policy or custom is the initial determination to be made by the trial court in a municipal liability claim. If the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to the existence of a policy or custom, then it is for the finder of fact to determine deliberate indifference. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir.1996) (citing *Hicks*, 992 F.2d at 1456–57). The Sixth Circuit has instructed that

> [i]t is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. For liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort. Such a *requirement* ensures that a county is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the county. The "policy" requirement is not meant

to distinguish isolated incidents from general rules of conduct promulgated by city officials. Instead, the "policy" requirement is meant to distinguish those injuries for which the county is responsible under § 1983, from those injuries for which the county should not be held accountable.

*Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir.2000) (internal citations omitted). A local government may be found liable for policies set by its lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404, 117 S.Ct. at 1388 (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36).

> A "custom" for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507–08 (internal quotation marks and citations omitted). "[O]fficial policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. at 1299. A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie. *Culberson v. Doan*, 125 F.Supp.2d

252, 263–64 (S.D.Ohio 2000). The Supreme Court has consistently held that a municipality may not be held liable solely on the basis of *respondeat superior. See Brown*, 520 U.S. at 404, 117 S.Ct. at 1388; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *City of Canton*, 489 U.S. at 392, 109 S.Ct. at 1206; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); *Pembaur*, 475 U.S. at 478, 106 S.Ct. at 1297–98.

It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original). Thus, to recover, a plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the county's official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation.

*Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir.2001) (internal citations omitted). The showing required has been described by courts as a rigorous one. *See*

*Black v. City of Memphis*, No. 98–6508, 2000 WL 687683, at *3 (6th Cir. May 19, 2000).

In his complaint, plaintiff alleged that the County violated his Eighth Amendment rights but wholly failed to allege a policy or custom of the County which resulted in his constitutional injury. Plaintiff presents these allegations for the first time in his response to the motion for summary judgment. His argument is based solely on a report issued by the Department of Justice (the "DOJ") in June 2001 and obtained by plaintiff through discovery subsequent to the filing of the instant motion. According to the report, the DOJ found, based upon tours conducted of the Jail in October and December, 2000, a year after Warren's detention, that certain constitutional deficiencies were present in various areas of Jail operation, including the medical department. Specifically, the Jail was cited for delays of days or weeks in continuing previously prescribed medications to new inmates, inadequate treatment of substance abuse, and lack of privacy in the intake area. The report noted that sick call slips, used to request medical attention, were often not available. In addition, the DOJ found that the Jail's policy of handling requests did not comport with accepted national standards for large jail facilities and that its actual practices, which included review of requests by a licensed practical nurse rather than a more highly qualified medical professional and examinations scheduled sometimes a week after submission of the request, were even worse. Inmates seen in the medical section following a request were more often than not examined by staff members not qualified to administer adequate treatment.[3] According to the report, the Jail policy referred to by the DOJ and found wanting stated that "sick call will be

---

**3.** The court notes at this juncture that this report, along with certain other exhibits at-

tached to plaintiff's response, is not in the

scheduled at least once per week for all inmates." (Pl.'s Resp. to Def., Shelby County and Sheriff A.C. Gilless' Mot. for Summ. J., Ex. G at p. 14.)

■ Plaintiff argues that the same policy in place at the facility at the time of the DOJ investigation existed during the period he was held there, as is evidenced by a copy of portions of the Jail's division manual attached as an exhibit to defendants' motion, which bears an effective date of September 15, 1998, a review date of September 15, 2000, and the authorization of the Sheriff. *See* Mem. of Facts and Law in Supp. of Mot. to Dismiss and Mot. for Summ. J., Ex. C. This policy, he contends, inflicted the constitutional violation of which he complains. The policy in itself, however, clearly is not unconstitutional and, although its findings are not binding on this court, the DOJ did not so conclude. Instead, the report noted that the Jail's policy for handling sick call did not track that of other large urban facilities which required review of medical requests within a shorter time frame. Plaintiff has offered no evidence, or even a conclusory statement, concerning how the written policy was interpreted by Jail officials, that is, how often sick call was scheduled, at the time he was incarcerated. Nor has he explained to the court in what manner the written policy affected his constitutional rights. The mere fact that a rather elastic and later criticized policy existed at the Jail during plaintiff's tenure there is simply not, alone, sufficient to establish municipal liability.

The crux of the plaintiff's argument, rather, appears to be that the County failed to act on his requests for medical treatment at all. In his deposition, plaintiff stated that he continued to suffer from back pain after the consultation and submitted three or four requests for medical treatment per week during his detention at the Jail, but was not examined by Dr. Stipanuk after the initial visit when his medications were confiscated. Appended to Warren's response to the motion for summary judgment are photocopies of three forms, dated August 16 and 17 and September 1, 1999, reflecting requests for medical treatment for pain. Plaintiff contends that he made the photocopies in the Jail's library after his requests were ignored. He testified in his deposition that he did not receive medical treatment because of Dr. Stipanuk's "unprofessionalism" and a personal prejudice that arose from their original encounter. Plaintiff has also offered portions of his deposition testimony in which he stated that family members called the Jail concerning his medical treatment and were informed that nothing could be done without Dr. Stipanuk's approval. It was unclear exactly to whom these calls were directed or whether anyone actually spoke with the physician.

When asked in deposition whether he thought the guards failed to forward his requests to the medical department or the Jail's policies concerning access to medical treatment were inadequate, Warren replied, "I am not complaining because I am not in a position to tell them how to run

---

form required by Rule 56(e). In addition, the admissibility of the report is questionable. The Sixth Circuit has stated that "it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)); *see also Halton v. Great Clips, Inc.*, 94 F.Supp.2d 856,

859 (N.D.Ohio 2000). However, as defendants have failed to challenge the evidence submitted on Rule 56(e) grounds, any objections that could have been made have been waived and the court may consider such material, even if inadmissible, in reaching its conclusions. *See Wiley*, 20 F.3d at 226; *Pasko v. American Nat'l Can Co.*, 998 F.Supp. 807, 809–10 (N.D.Ohio 1998).

their facility. Okay. But Dr. Stipanuk did what he did and that's the reason why we are here today. If Dr. Stipanuk had utilized the same professionalism that the CMP Medical Department utilized at the penal farm, you and I would not be sitting here." (Pl.'s Resp. to Def., Shelby County and Sheriff A.C. Gilless' Mot. for Summ. J., Exh. C, Dep. of Julius Sylvester Warren at pp. 121–23.)

In order to establish municipal liability under an "inaction" theory, the plaintiff must demonstrate:

(1) the existence of a clear and persistent pattern of [unconstitutional activity];

(2) notice or constructive notice on the part of [officials];

(3) [officials'] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the [officials'] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe,* 103 F.3d at 508; *see also Gregory,* 220 F.3d at 442; *Weaver v. Tipton County, Tenn.,* 41 F.Supp.2d 779, 789 (W.D.Tenn. 1999). The evidence must show that "the need to act is so obvious that the [officials'] 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [plaintiff's] constitutional rights." *Doe,* 103 F.3d at 508 (citing *Canton,* 489 U.S. at 389, 109 S.Ct. at 1205). "Deliberate indifference" in this context does not encompass "a collection of sloppy, or even reckless, oversights." *Id.*

A careful review of the evidence presented, viewed in the light most favorable to the plaintiff, reveals that there is no evidence of a persistent pattern of completely ignoring inmates' requests for medical attention during the period of Warren's detention or that Jail officials had notice of such an alleged custom. *See*

*Weaver,* 41 F.Supp.2d at 789 (holding that the persistent pattern element requires more than a showing of failure to provide medical care to a single individual over a relatively short period of time). Findings by the DOJ more than a year after plaintiff left the facility that inmates may not have received medical treatment in a timely fashion is simply not enough, in this court's view, to defeat summary judgment. Thus, the court concludes that plaintiff has failed to establish a policy or custom for which liability could attach to the County. As plaintiff's failure to present sufficient evidence to demonstrate a policy of inaction on the part of the Jail ends the court's inquiry, it need not address the parties' arguments concerning deliberate indifference. *See Doe,* 103 F.3d at 508.

For the reasons set forth herein, the motion for summary judgment of the County and the Sheriff in his official capacity is also hereby GRANTED.