**Sylvia WEAVER, Administratrix of the Estate of Larry Earl Weaver, Plaintiff,**

v.

**TIPTON COUNTY, TENNESSEE, et al., Defendants.**

**No. 96–2659–TUV.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 22, 1999.

Melissa A. Maravich, John W. Chandler, Jr., Burch, Porter & Johnson, Memphis, TN, for plaintiff.

D. Randall Mantooth, Leitner, Williams, Dooley & Napolitan, Nashville, TN, Charles O. McPherson, Leitner, Williams, Dooley & Napolitan, Memphis, TN, for defendants.

John R. Cannon, Jr., Chapman Sellers Morrow, The Hardison Law Firm, Memphis, TN, for Individual defendants.

ORDER ON DEFENDANTS' MOTION TO AMEND ANSWER AND ON MOTIONS FOR SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiff Sylvia Weaver is the administratrix of the estate of Larry Earl Weaver, who died while incarcerated at the Tipton County Jail. Plaintiff brings her claim pursuant to 42 U.S.C. § 1983, alleging defendants violated her father's Eighth and Fourteenth Amendment rights in their deliberate indifference to his medical needs. Presently before the court are motions for summary judgment filed by three groups of defendants.

I. *Standard of Review*

The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or

judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed.R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. *Background*

Unless otherwise noted, the following facts have been recited in a light most favorable to plaintiff. On May 23, 1995, Larry Earl Weaver was processed into the Tipton County Jail by Sergeant Jerry Bowers. At that time, Bowers observed Weaver exhibiting signs of alcohol withdrawal. Bowers indicated on Weaver's intake form that Weaver had a history of seizures and alcohol withdrawal along with several other medical problems, and that he was taking prescription medications. Weaver was discharged from the jail and scheduled to appear in General Sessions Court on June 15, 1995.

Weaver failed to appear for his scheduled court date. On June 26, Weaver voluntarily turned himself over to the police and was again incarcerated at the Tipton County Jail. At his second processing into the jail, Weaver filled out a handwritten form stating he was taking medication for seizures, and he also checked "yes" to a question that asked if he suffered from epileptic seizures. Jailer Connie Stroder was the processing officer at this time, but on her intake form she did not list the seizures Weaver claimed he suffered from or any of the medical problems listed on his May 23, 1995 intake form.

On June 28, Bowers observed Weaver in his cell having what he thought was a seizure and told Weaver that he was going to take him to the hospital. Weaver told Bowers he was fine and that going to the hospital was unnecessary. Bowers had experience with people having seizures and understood that medical care was appropriate regardless of the wishes of the individual. Instead of seeking medical treatment, however, Bowers transferred Weaver to a holding cell where he could be monitored more closely. Bowers failed to advise other jailers of his belief that Weaver was having seizures or the purpose for moving him to the holding cell.

On June 29, Weaver was brought into court but was shaking uncontrollably and speaking incoherently. The presiding judge ordered Weaver to be taken for an evaluation by a psychologist. While waiting for this transportation to the evaluation, Deputy Sheriff Barney Hartz observed Weaver displaying classic signs of alcohol withdrawal.

Chief Jailer Edward Triminal and Officer Bobby Prescott transported Weaver to the psychologist's office. During that trip, Triminal and Prescott observed Weaver shaking continually and speaking incoherently about needing to tell his father he could not make it to his funeral.

After conducting the evaluation, the psychologist diagnosed Weaver as suffering from alcohol withdrawal and advised Prescott that Weaver needed to be taken to the emergency room for treatment. The psychologist thought Prescott would take Weaver to a hospital located across the street. Instead, Bowers came to get Prescott and Weaver and they returned Weaver to the holding cell at the jail.

Upon his return, Weaver started banging on the walls and door to the holding cell to the extent that Bowers and other jailers had to restrain him with leg irons and handcuffs. Within the next day, Bowers advised Triminal of this episode and the purpose for his moving Weaver to a holding cell. Bowers still did not inform any other jailers of his having seen Weaver have a seizure. Prescott also informed Triminal of the psychologist's recommendation that Weaver receive medical treatment.

Throughout June 30, and into the morning of July 1, Weaver continually screamed about his cell filling up with water and snakes coming out of the walls. Weaver's yelling could be heard throughout the cell block. Jailer Harold Wolfe reported to Bowers that Weaver had had a nightmare. One inmate who looked in on Weaver during this period reported seeing him "bugeyed," shaking, and acting paranoid.

Over the remainder of July 1, and throughout July 2, Weaver grew quiet and lay on the floor beneath his bunk moaning.[1] He also refused to eat during this more subdued period. Harold Wayne McBroom, Jr. occasionally checked in on Weaver during this time by peering through the food slot of the holding cell, and by asking Weaver if he needed anything. McBroom admitted that he never received a verbal response from Weaver, however, and that he never opened the door to check on him.

At approximately 7:30 p.m. on July 2, 1995, McBroom and Mary Nell Hickman found Weaver dead in his cell. Dr. Michael Levinson determined Weaver's cause of death to be alcohol withdrawal, which would carry a less than 1% mortality rate if treated properly and a 15% mortality rate if left untreated. Weaver had previously responded positively to treatment for alcohol withdrawal. At no point during his incarceration did any of the jailers obtain medical treatment for Weaver. Nor was Weaver given any of four prescription medications he was supposed to be taking during his incarceration.

Sheriff Lewis testified that at all times material to this suit, it was the policy of the Tipton County Jail to take inmates in need of medical attention to medical care, and that this was routinely done. There is no evidence of any inmate except for Larry Weaver ever having not received medical attention for serious medical needs. Larry Weaver is the only inmate known to have died while incarcerated at the Tipton County Jail.[2]

## III. *Plaintiff's Claims and Defendants' Motions*

Weaver's daughter, Sylvia Weaver, has brought this action as the administratrix of her father's estate. In her Second Amended Complaint, plaintiff brings several levels of claims, and due to the variety of the claims and the number of defendants, the court will summarize plaintiff's claims here.

Count A of the Second Amended Complaint alleges that Sheriff Lewis and the individual members of the Tipton County Commission are personally liable for failing to perform their function as responsible policymakers. More specifically, Count A alleges that the defendants named in Count A were deliberately indifferent to the medical needs of Tipton County Jail inmates in failing to establish a policy ensuring that the jail would be adequately staffed and supervised and that the jailers would be adequately trained.

---

**1.** It is unclear when the restraints referred to earlier were removed to allow Weaver the freedom to crawl under his bunk, or if they were removed at all.

**2.** Although plaintiff disputes much of this paragraph, she offers no evidence to the contrary. Instead, she merely states that she is without knowledge as to the statement's truth, and that she therefore disputes it. This is insufficient to create a genuine issue of material fact when the defendant relies on deposition testimony, as is the case here. Fed. R.Civ.P. 56(e).

Count B alleges that Sheriff Lewis is personally liable as a supervisor who implicitly authorized or acquiesced in the unconstitutional conduct of his subordinates.

Count C alleges that Tipton County, Sheriff Lewis in his official capacity and the Tipton County Commissioners in their official capacities are liable for failure to establish adequate policies governing the staffing and supervision of the jail and the training of the jailers.

Count D makes two allegations against Captain Yoakum. First, Count D essentially alleges that Yoakum decided not to obtain medical care for Weaver even though he knew his needs were not being attended to. Second, Count D alleges that Yoakum is personally liable as a supervisor who implicitly authorized or acquiesced in the unconstitutional conduct of his subordinates.

Count E makes the same two allegations against Chief Jailer Triminal that were made against Captain Yoakum in Count D.

Counts F through T allege that various jailers are personally liable for their deliberate indifference to Weaver's medical needs.

Only some of the defendants have filed motions for summary judgment, and the court will be careful to point out exactly what defendants this order pertains to as it discusses each Count. In some instances, a defendant filed a motion for summary judgment, but the motion did not address all claims made against that defendant. The court will also take care to highlight the remaining claims against these defendants.

In response to defendants' motions, plaintiff filed a lengthy memorandum that argues several claims not included in the Counts set forth in the Second Amended Complaint. First, plaintiff's response sets forth new claims against Captain Yoakum and Chief Jailer Triminal as policymakers. Unlike the policymaker claim against Captain Lewis, the policymaker claims against Yoakum and Triminal were never pleaded in Weaver's complaint.[3] Second, plaintiff's response sets forth new claims against both Tipton County and Sheriff Lewis for their ratification of the conduct causing Weaver's death because they allegedly failed to investigate the circumstances surrounding his death. Plaintiff, however, has not amended her Second Amended Complaint to include these claims, and they are not before the court.

IV. *Eighth Amendment Claims*

■ Every one of plaintiff's claims assert that the conduct of the defendant at issue violated Weaver's right to obtain medical treatment as guaranteed by the Due Process Clause of the Fourteenth Amendment and the Eight Amendment. Weaver, however, was a pre-trial detainee, and the protections of the Eighth Amendment had not then attached. *Ingraham v. Wright,* 430 U.S. 651, 672 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Accordingly, defendants' motions for summary judgment are granted to the extent Weaver's complaint alleges her father's Eighth Amendment rights were violated.

Nevertheless, the Supreme Court has held that "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) (citing *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)). "Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, it follows that such deliberately

---

**3.** Although Weaver alleged in her complaint that Yoakum and Triminal were responsible to ensure that prisoners received adequate medical care, she made that same allegation against all the individual defendants. Weav-

er's complaint is not sufficient to provide notice to Yoakum and Triminal that they are being sued as policymakers as well as being sued as supervisors and individual jailers.

indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial." *Id.* (internal citations omitted). Thus, the court will proceed to defendants' motions with respect to plaintiff's Fourteenth Amendment claims.

### V. Motion to Amend—Qualified Immunity

All of the individually named defendants who have filed motions for summary judgment have raised the defense of qualified immunity. In response, plaintiff argues that defendants have waived this defense because they failed to plead it in their answer. After receiving plaintiff's response, the defendants at issue filed a motion to amend their answer to include the defense of qualified immunity, to which plaintiff objected.

■ The court need not decide whether defendants should be allowed to argue the defense of qualified immunity because under the circumstances of this case it is an empty doctrine. When a plaintiff bases a 42 U.S.C. § 1983 claim against a government official for his or her deliberate indifference to a prisoner's medical needs, the necessity of examining the defendant's conduct under the subjective deliberate indifference standard pronounced in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), precludes the availability of a qualified immunity defense. *McKee v. Turner,* No. 96–3446, 124 F.3d 198, 1997 WL 525680, at *4 (6th Cir. Aug.25, 1997) (internal footnotes omitted).[4]

4. Although citation to unpublished Sixth Circuit precedent is disfavored, this case is referred to because it establishes the law governing the present action and there is no published opinion that would serve as well. *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989) (internal quotations omitted).

5. Other circuits have concluded that *Farmer* does not vitiate the qualified immunity defense in the face of a deliberate indifference claim. *See Hare v. City of Corinth,* 135 F.3d 320, 327–28 (5th Cir.1998). But for the pronouncement of the Sixth Circuit, this court

*See also Sanderfer v. Nichols,* 62 F.3d 151, 154–55 (6th Cir.1995) (analyzing deliberate indifference claim for subjective deliberate indifference).[5] Accordingly, defendants' motion to amend their answer is denied.

### VI. Deliberate Indifference— Individual Liability

■ To hold that a prison official is deliberately indifferent, the court must find that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.[6] This is a subjective test that requires a showing that the defendant was aware of the risk of harm. *Sanderfer,* 62 F.3d at 154. A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970. In this regard, deliberate indifference "is the equivalent of recklessly disregarding" "a substantial risk of serious harm." *Id.* at 836, 114 S.Ct. 1970. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence...." *Id.* at 842, 114 S.Ct. 1970. There are several ways prison officials

would agree with the court's analysis in *Hare.* The court is not free to ignore Sixth Circuit precedent, however, and that precedent seems clearly established.

6. The plaintiff must still show that the deprivation alleged is objectively sufficiently serious. *Id.* at 834. The court finds plaintiff has produced sufficient evidence such that a reasonable juror could conclude the denial of medical care to an individual suffering from alcohol withdrawal was objectively sufficiently serious.

might show they were not deliberately indifferent to a plaintiff's medical needs.

Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or non-existent.

In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Id.* at 844, 114 S.Ct. 1970.

### A. *The Jailers*

The first part of Count E and all of Counts F through T of plaintiff's Second Amended Complaint named the following Tipton County Justice Complex employees as being personally liable for their deliberate indifference to Weaver's medical needs: Chief Jailer Edward Triminal; Sergeant Jerry Bowers; Officer Kevin Frazier; Hugh Hanson; Mary Nell Hickman; Sergeant Earcle Kiney; Kevin Leffingwell; Harold Wayne McBroom, Jr.; Connie Stroder; Harold Wolf; Barney Hartz; Bobby Prescott; James Joseph Vinecki; John Frank Tipton; Steve Cheairs; and John Lee [hereinafter "the jailers"]. Of these defendants, Triminal, Bowers, Hanson, Hickman, Kiney, McBroom, Stroder, Wolf, Hartz, Prescott, and Vinecki have joined in filing a motion for summary judgment.

The jailers base their motion for summary judgment solely on the application of the doctrine of qualified immunity. As the court discussed earlier, that doctrine is not available under the circumstances of this case. Accordingly, the jailers' motion for summary judgment is denied.

### B. *Captain Yoakum*

■ The first part of Count D of plaintiff's Second Amended Complaint essentially alleges that Captain Yoakum was aware of Weaver's medical needs and that he made a conscious decision not to attend to those needs. Count D also alleges Yoakum caused Weaver to be moved to a one-person "drunk tank" where he was left unattended and eventually died.

Yoakum has given deposition testimony that he had no contact with Weaver during his incarceration and knew nothing about his incarceration until after his death. Plaintiff has not offered any evidence suggesting otherwise, and has not challenged the truth of Yoakum's assertion. Thus, given this state of the evidence, the court finds a reasonable juror could not conclude Yoakum knew of Weaver's medical needs, and the court therefore holds that Yoakum could not have been deliberately indifferent to Weaver's needs through deliberate inaction in the face of knowledge of Weaver's condition. Therefore, the court finds Yoakum is entitled to summary judgment on this claim.

### C. *The Supervisors*

Count B, the second part of Count D, and the second part of Count E allege that Sheriff Lewis, Captain Yoakum and Chief Jailer Triminal [hereinafter "the supervisors"] are personally liable for their implicit authorization, approval, or acquiescence in the alleged unconstitutional conduct of their subordinates.[7] Only Lewis and Yoa-

---

7. In her complaint, Weaver draws a distinction between Lewis' capacity as a supervisor and his capacity as a policymaker. Weaver alleges Lewis improperly abrogated his duty as a policymaker to set policy ensuring that the jail would be adequately staffed, and that the jailers would be adequately trained and supervised such that prisoners' medical needs would be cared for. Weaver also separately alleges that as the immediate supervisor of the jailers, he implicitly authorized, approved or acquiesced in his subordinates' deliberate indifference to her father's medical needs. In the motion for summary judgment, Lewis,

kum have moved for summary judgment on this claim. Thus, this order does not affect the individual claim against Triminal in his capacity as a supervisor.

■ A claim based on inadequate supervision cannot be maintained based on simple negligence. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir. 1989).

> [A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982). The failure to respond to repeated unconstitutional conduct by subordinates is relevant to determining whether supervisors implicitly authorized, approved or acquiesced in their conduct. *See Leach,* 891 F.2d at 1246. However, a supervisor' knowledge of his subordinates' unconstitutional conduct will not always result in the supervisor's liability. *See Bellamy v. Bradley,* 729 F.2d 416 (6th Cir.1984) (finding evidence that supervisors were aware of some instances of alleged harassment of prisoner by prison guards did not show that the supervisors actively participated in or authorized the harassment).

■ Lewis and Yoakum assert that plaintiff has failed to offer any evidence

showing that they were involved in, or had knowledge of, the allegedly unconstitutional conduct of their subordinates such that a reasonable juror could find they acquiesced in or approved of that conduct. In response, plaintiff alleges that Lewis improperly delegated his policymaking and oversight responsibilities at the jail to Yoakum. Plaintiff then alleges that Lewis failed to follow up and ensure that Yoakum had provided for the serious medical needs of the prisoners. In turn, plaintiff alleges that Yoakum ignored his policymaking role and supervisory responsibility to ensure that adequate medical care was being provided to inmates at the jail by completely delegating this responsibility to Triminal. Plaintiff has not alleged, however, that either Lewis or Yoakum encouraged or directly participated in the alleged unconstitutional conduct of their subordinates. Nor has plaintiff offered any evidence that Lewis or Yoakum implicitly authorized or acquiesced in the alleged unconstitutional conduct. Plaintiff has offered no evidence of prior unconstitutional conduct by these supervisors' subordinates at the jail such that the supervisors could be said to have been on notice of the unconstitutional behavior. Plaintiff has produced no evidence of additional instances where prisoners did not have serious medical needs attended to, such that the court might find that these supervisors tacitly approved of their subordinates' alleged unconstitutional conduct. To the contrary, Yoakum has testified that Weaver is the only incarcerated individual to have ever died at the Tipton County Jail, and Lewis has testified that inmates routinely have their medical needs attended to.

---

however, makes no distinction between the claims against him as a supervisor and as a policymaker, and plaintiff, in turn, seems to merge those claims in response to the motion for summary judgment. The court recognizes that these are two separate claims. *See Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80–81 (6th Cir.1995) (recognizing distinction between claims against individual for actions in his supervisor and policymaking capacities). Both claims require plaintiff to establish on the merits that Lewis was sub-

jectively deliberately indifferent to the medical needs of prisoners. *See id.* at 81 (citing *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). For clarity, the court will address the supervisor claim against Lewis in this section of this order with the supervisor claim against Yoakum. The policymaker claim will be discussed supra in this order in tandem with the claim against the Tipton County Commissioners, as both those claims identically allege that defendants failed to establish certain policies.

Even if the court found that the supervisors were "sloppy, reckless, or neglectful in the performance of their duties," that is not enough for 42 U.S.C. § 1983 liability. *Doe v. Claiborne County*, 103 F.3d 495, 513 (6th Cir.1996).

Defendants here were simply not confronted with such a widespread pattern of constitutional violations that their actions or inactions amounted to a deliberate indifference to the danger of [unconstitutional conduct by their subordinates]. The steps they did take, and even those they failed to take and arguably should have taken, do not show that they encouraged the specific incident of misconduct or in some other way directly participated in it. Nor did they authorize, approve, or knowingly acquiesce in [their subordinates'] unconstitutional conduct. They had no knowledge, constructive or otherwise, that [their subordinates were violating prisoners' constitutional right to receive medical care].

*Id.* (internal quotations and citations omitted, illustrative alterations added). *See also Taylor*, 69 F.3d at 80–81 (focusing on supervisor's knowledge of his subordinates' alleged unlawful conduct as material factual issue); *Leach*, 891 F.2d at 1247 (finding prior incidents of misconduct at the jail put sheriff on notice). The court finds that plaintiff, like the plaintiff in *Claiborne County*, has failed to establish that the supervisors implicitly authorized, approved, or acquiesced in the alleged deliberate indifference of their subordinates to the medical needs of Weaver because plaintiff has failed to establish that they had knowledge as supervisors of any prior unconstitutional conduct by their subordinates.

Accordingly, the court grants judgment on this issue and dismisses plaintiff's claims of personal liability against Lewis and Yoakum for their alleged failure to adequately supervise the operation of the jail.

## VII. *Official Capacity Claims*

Count C of plaintiff's Second Amended Complaint sets forth several claims against Sheriff Lewis and the members of the Tipton County Commission in their official capacities. Count C makes identical claims against Tipton County.

 In an official capacity suit, the real party in interest is the governmental entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). A plaintiff seeking to recover damages in an official capacity suit must look to the governmental entity. *Id.* Since suits may be maintained against the municipality, there is no longer a need to bring suits against local government officials. *Id.* at 167 n. 14, 105 S.Ct. 3099. Thus, suits against local officials are treated as suits against the municipality. *Claiborne County*, 103 F.3d at 509. Accordingly, the court finds the Sheriff Lewis and the Tipton County Commissioners are entitled to summary judgment on plaintiff's claims against them in their official capacity.[8]

## VIII. *Municipal and Policymaker Liability*

Count A of plaintiff's Second Amended Complaint alleges that the Tipton County Commissioners and Sheriff Lewis were obligated by statute to provide medical attention to all Tipton County Jail inmates. Plaintiff then alleges that the Commissioners and Lewis were deliberately indifferent to the medical needs of the inmates in failing to ensure that the jail was adequately staffed and supervised and that jailers were adequately trained. Plaintiff claims the Commissioners and Lewis

8. It is unclear to the court whether a county sheriff is an officer of the state or of the county. That determination need not be made, however, as the court finds that at the least Lewis was acting as Tipton County's agent in running the jail pursuant to Tenn. Code Ann. § 8–8–201(3). In other words, Lewis was an authorized policymaker for the county with respect to the jail.

knew, or should have known, that these shortcomings would result in the denial of medical care at the jail, and that these shortcomings actually did lead to a "persistent and widespread pattern" of failure to provide for the serious medical needs of individuals detained at the jail. Plaintiff then claims these shortcomings were the proximate cause of her father's death in violation of the Fourteenth Amendment. Count C essentially asserts that Lewis' and the Commissioners' failures in their policymaking roles gives rise to municipal liability.

### A. Tipton County

 A municipality can not be held liable for an injury caused by its agents or employees under 42 U.S.C. § 1983 based on a theory of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a municipality may only be liable for a constitutional tort where the action occurred pursuant to an official municipal policy. *Id.* In order to hold the municipality liable, the municipal policy must be the "moving force" behind the constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Weaver alleges that the moving force behind the violation of her father's rights and his resulting death was Tipton County's failure through the inaction of Sheriff Lewis and the Tipton County Commissioners to adopt adequate policies relating to: 1) the staffing of the Tipton County Jail; 2) the training of the jailers to recognize the serious medical needs of inmates; and 3) the supervision of the jail's operation.[9] All three of Weaver's allegations share the characteristic of asserting liability for the inaction of Tipton County.

In general, to state a municipal liability claim under an "inaction" theory, Weaver must establish the existence of a clear and persistent pattern of unconstitutional conduct by municipal employees and notice or constructive notice of that pattern on the part of the municipality. *Claiborne County,* 103 F.3d at 508. Weaver must then demonstrate that the municipality's inaction reflected deliberate indifference such that its failure to act reflects an official policy of inaction, and that this policy is the moving force behind the constitutional violation at issue. *Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197; *Claiborne County,* 103 F.3d at 508.

 The unconstitutional conduct Weaver complains of is defendants' failure to provide adequate medical care to her father while he was incarcerated at the Tipton County Jail. While deliberate indifference to prisoners' medical needs is unconstitutional, Weaver has nevertheless failed to show a pattern of unconstitutional denial of medical care at the Tipton County Jail. Weaver attempts to portray a series of denials of treatment to her father over the course of six days as a pattern of unconstitutional conduct. The court finds, however, that a clear and consistent pattern of unconstitutional conduct requires more than the failure to provide medical care to a single individual over such a short period of time. The purpose of requiring a pattern of unconstitutional conduct is to ensure that a municipality will not be held liable for constitutional violations on a respondeat superior theory. If there is a pattern of illegal conduct a court can infer that the municipality had notice of the conduct, and if the municipality takes no action a court can find such inaction was deliberate. Where, as here, plaintiff's only evidence of misconduct occurred against a single individual over a short period of time, it cannot be inferred

9. In response to defendants' motions for summary judgment, plaintiff also alleges Tipton County failed to adopt any policy relating to the provision of medical care to inmates at the jail, The court finds this claim sufficiently analogous to plaintiff's claim that Tipton County failed to adequately train the jailers, and the court will address the claim in that context.

that the municipality had notice of the misconduct and that it was deliberately indifferent. On the other hand, defendants have offered evidence of hundreds of instances of Tipton County inmates receiving medical attention, and of the fact that Weaver is the first inmate to have died at the jail. Thus, plaintiff's claim would appear to fail under the framework set out in *Claiborne County*.

Plaintiff argues that notwithstanding the lack of a pattern of unconstitutional conduct, a claim may be maintained based on a single violation of federal rights when the violation is accompanied by certain inactions on the part of a municipality. In *Board of County Comm'rs v. Brown*, the Supreme Court acknowledged "the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." 520 U.S. 397, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997) (citing *Canton*, 489 U.S. at 390 and n. 10, 109 S.Ct. 1197.). Thus, the Supreme Court left open "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations ... [because] in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* 117 S.Ct. at 1391.

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation—that the municipality's indifference led direct-
> ly to the very consequence that was so predictable.

*Id.* The court finds this logic may be extended to include failure to staff or supervise claims.

The court must thus determine whether in light of the duties assigned to employees at the Tipton County Jail the need for increased staffing, training, or supervision was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390, 109 S.Ct. 1197. With regard to the adequacy of training, the Supreme Court has said:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.
>
> Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, respondent must still

prove that the deficiency in training actually caused the police officers' indifference to her medical needs. Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?

*Id.* at 390–91, 109 S.Ct. 1197. The court finds this standard equally applicable to Weaver's allegations of inadequate staffing and supervision at the jail. Neither Lewis, the Commissioners, nor Tipton County have addressed whether plaintiff can succeed on this type of claim.

1. *Failure to Train, Staff and Supervise*

Weaver alleges the failure to adequately train jailers at the Tipton County Jail reflected deliberate indifference on the part of the county to potential constitutional violations. Plaintiff admits, however, that all jailers are required within one year of employment to attend basic training, which includes training on how to identify common or frequent medical problems at the jail, including alcohol withdrawal. More specifically, according to plaintiff, basic trainees received training related to the symptoms of alcohol withdrawal, and the fact that alcohol withdrawal is a potentially fatal medical condition for which medical treatment must be provided.

Plaintiff has also claimed that there was no official policy in place at the jail relating to the provision of medical services to inmates. Sheriff Lewis has given deposition testimony, however, concerning the medical policy at the Tipton County Jail. The jail screened inmates prior to their arrival. Inmates who had obvious injuries from an accident or who were highly intoxicated would not be accepted until they were treated by a physician. Once in the jail, inmates were taken to medical care providers upon request, or if the inmate suffered from an obvious injury such as a cut or broken leg. Sheriff Lewis also testified that an individual showing signs of alcohol withdrawal would be taken to medical care. Inmates were also required to be physically examined once every two weeks. These policies were implemented on hundreds of occasions in bringing inmates to medical care. Weaver has failed to offer any evidence on how this medical policy was deficient, or as to how it was likely to result in constitutional violations.[10]

Plaintiff also argues that while the training program itself may have been adequate, it was not required as a part of pre-employment training to employees. As a result, plaintiff argues, at least four of the jailers on duty while Weaver was incarcerated had not received the basic medical training. Correspondingly, plaintiff's failure to staff claim alleges that defendants failed to ensure that there was at least one person per shift trained to recognize prisoners who needed medical attention. Furthermore, plaintiff also alleges that the jailers were unsupervised.

As evidence of the lack of pre-employment training, plaintiff points to Sheriff

---

**10.** Weaver also alleges that there was no written policy governing medical procedures at the Tipton County Jail. More specifically, Weaver alleges Tipton County's Jail Policy Manual failed to include written policies relating to the provision of medical services. Neither Weaver nor defendants filed the full text of Tipton County's Jail Manual. Nevertheless, Weaver refers to Section 10.132 of that manual, which governs the medical screening to be done on persons admitted to the jail. Thus, it appears that at least some written policy governing medical procedures existed.

Weaver continues by equating the alleged absence of a written policy with a total ab-

sence of any medical policy. Weaver than argues that "the complete failure of a municipality to adopt policies in areas where there is an obvious risk that the failure to do so will result in the violation of constitutional rights, such as medical care for prison inmates, is itself a policy of deliberate indifference on the part of the municipal entity." Even assuming no written policy exists, Weaver has cited no case, and this court has found none, which requires a policy to be written. Nor do the Minimum Standards for Local Correctional Facilities, which plaintiff alleges govern the conduct at the Tipton County Jail, require the medical policy to be written.

Lewis' testimony that new jailers were not required to undergo basic training. Lewis also testified that he was unaware of any jail policy establishing a time-frame in which new jailers would be trained, but that an informal policy existed directing that they be trained as quickly as possible. According to Lewis, any specific time-frame for training new jailers was established by the Tennessee Corrections Institute's minimum standards. Those standards require new jailers to undergo the basic training within one year of employment. As evidence of specific jailers who had not undergone the training at the time of Weaver's incarceration, plaintiff prepared a chart, presumably compiled from the individual jailers' personnel records.[11] The chart sets forth the date five jailers received the training, and indicates that four jailers had not received the training at the time of Weaver's incarceration.[12] As evidence of her claim that there were shifts at the jail without at least one jailer who had undergone the training, plaintiff submitted another chart breaking down the shifts worked at the jail.[13] There were three shifts per day at the jail, and two jailers worked on each shift. On at least three shifts during Weaver's incarceration, including the night before his death, neither jailer on duty had received the basic medical training course. On several other shifts, only one of the two jailers on duty had received the medical training. As evidence of her lack of supervision claim, plaintiff again points to Lewis' testimony where he states that he delegated supervisory authority to Yoakum, who in turn delegated it to Triminal, who in turn delegated it to shift sergeants. Plaintiff, however, asserts that no jailer on duty at the time of Weaver's death claimed during his or her deposition to be the shift sergeant on duty. No defendant has come forward with information regarding who was in charge at the time of Weaver's death.

Plaintiff's argument is not without merit. While the training program itself may have been adequate, jailers were not required to attend the program until one year of their employment start date. This resulted in several shifts at the jail during Weaver's incarceration where either none or only one of the two jailers on duty had received the medical training. Furthermore, because there is no evidence of any supervision of the jailers at the time of Weaver's death, it is unclear if Lewis' understanding on how supervisory responsibilities were delegated is correct, or if it is correct, whether the supervisory system was followed.

■■■ Based on the evidence before it, the court finds a reasonable juror could conclude that Tipton County's failure to ensure that adequate staffing, training, and/or supervision polices were in place and enforced would so obviously result in the violation of prisoners' constitutional rights that Tipton County could be found deliberately indifferent. Furthermore, it is possible that plaintiff's evidence could convince a reasonable juror that but for the inadequate policies, Weaver would not have had his constitutional rights violated. Accordingly, Tipton County's motion for summary judgment is denied.

### B. *Sheriff Lewis*

Like Tipton County, Lewis also argues that he could not have been subjectively indifferent because he did not have any knowledge of a risk to inmates at the jail because there had been no previous constitutional violations. Lewis also argues that

---

**11.** Defendants have not objected to plaintiff's reliance on the chart.

**12.** The chart indicates that jailers Hickman, Stroder, Vinecki and Wolfe had not received the basic medical training prior to Weaver's incarceration, but that jailers Hanson, Kinney, McBroom, Prescott and Triminal had

received the training. The chart does not indicate whether the other jailers named as defendants had received the training prior to Weaver's incarceration.

**13.** This chart was prepared from the jail log, which is in the record.

plaintiff's only evidence of inadequate supervision, training or staffing is in regard to the circumstances surrounding Weaver's death. The court finds, however, that, similar to municipal liability, a policymaker can be liable where an inadequate policy will obviously lead to constitutional violations. Thus, for the reasons discussed above with respect to Tipton County, Lewis' motion for summary judgment on the claims against him as a policymaker is denied.

### C. The Commissioners

"Because section 1983 has a 'color of law' requirement, a board member can be held liable only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Claiborne County*, 103 F.3d at 512. "[T]he relevant question for purposes of § 1983 liability in this context is whether the duty to have taken some action is of such a nature that the individual's inaction will render him responsible for the constitutional harm." *Id.* at 511.

In *Claiborne County*, the plaintiff sued individual school board members alleging that they had failed to remove a teacher from student contact and even rehired the teacher while having knowledge of the teacher's propensity to sexually abuse children. *Id.* at 504. The plaintiff had been abused by the teacher, and she alleged that the school board members' shortcomings constituted deliberate indifference to her constitutional rights. *Id.* at 503. While recognizing that the school board as an entity had a statutory duty to supervise school personnel, the Sixth Circuit found that the individual school board members could not act under color of state law

independent of the board. *Id.* at 511–12. The court found that the defendants' positions as school board members could not, without more, be the basis for a finding that they were individually acting under color of state law. *Id.* at 512. Instead, to establish the color of law requirement a plaintiff must identify "some cognizable duty that state or federal law imposes upon the" individual board member. "In the absence of a duty there is no section 1983 liability because the failure to act cannot be said to have occurred under color of law." *Id.*

■ In the case at bar, plaintiff's claims against the Commissioners are very similar to those against the school board members in *Claiborne County*. Plaintiff asserts that the Commissioners erred in failing to adequately perform a discretionary function, but none of the individual Commissioners could have acted independently of the board to change that result. *See id.*[14] Nor is there any evidence that any of the Commissioners had personal knowledge that prison officials were deliberately indifferent to prisoners' medical needs. *See id.* As the Sixth Circuit held in *Claiborne County*, plaintiff's allegations are insufficient to sustain a § 1983 claim against the individual Commissioners. Accordingly, plaintiff's claim against the individual Commissioners in their personal capacities is dismissed.[15]

### IX. Conclusion

For the foregoing reasons, defendants' motion to amend their answer is denied.

Defendants' motions for summary judgment are granted with respect to plaintiff's

---

**14.** Tennessee Code Annotated § 41–4–115(a) provides that "[t]he county legislative bodies alone have the power, and it is their duty, to provide medical attendance upon all prisoners confined in the jail in their respective counties." While this section imposes a duty upon the county commission, it does not impose any duty on individual county commissioners. Nor do the Tennessee statutes governing county commissions place any duty to act upon individual commissioners. *See* Tenn.Code Ann. § 5–5–101 *et seq.*

**15.** Although the Commissioners did not raise the "color of law" argument in their motion, the court is empowered to examine the pleadings for immaterial content under Fed. R.Civ.P. 12(f).

claims alleging violations of the Eighth Amendment.

With respect to plaintiff's Fourteenth Amendment claims, Sheriff Lewis' motion for summary judgment is denied with respect to his individual liability as a policymaker, and granted in all other respects. The Tipton County Commissioners' motion for summary judgment is granted in full. Captain Yoakum's motion for summary judgment is granted in full. The jailers' motion for summary judgment is denied. Tipton County's motion for summary judgment is denied.