**Shawn KELLEY, Plaintiff**

v.

**COUNTY OF WAYNE,
et al., Defendant**

**Shawn Kelley, Plaintiff**

v.

**County of Wayne, Defendant**

**Nos. 01–CV–72711–DT,
03–CV–70637–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 4, 2004.

Dean D. Elliott, Royal Oak, MI, Brian A. McKenna, Barry P. Waldman, Sachs Waldman, Detroit, MI, for Plaintiff.

William S. Pearson, Wayne County Corporation Counsel, Detroit, MI, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights case arising from the suicide of Terrence Kelley, a federal prisoner being detained in the Wayne County, Michigan, jail. Pending are cross-motions for summary judgment For the reasons that follow, the motion by defendants United States Deputy Marshals Scott Machlay and Mark Jankowski shall be granted, and plaintiff's motion shall be overruled.

### Background

Terrence Kelley, a heroin addict, was arrested in the late afternoon of January 31, 2000, after he robbed a bank in Clinton Township, Michigan. He was questioned by F.B.I. agents and lodged overnight in the Clinton Township lockup. The next morning, February 1, 2000, F.B.I. agents brought Kelley to the federal courthouse in Detroit, and delivered him the United States Marshal's office at about 9:30 a.m.

Defendant Deputy Machlay accepted custody of Kelley. He saw that Kelley had a "grayish-green pallor common with heroin addicts, and he seemed to be in a bit of physical distress." Machlay asked Kelley if he was "crashing." Kelley said that he was, telling Machlay that the drug was heroin. Kelley indicated that he did not want anything to eat.

Machlay understood that heroin withdrawal symptoms are similar to those of severe flu, and that a person undergoing withdrawal can be nauseated and vomit. It was also Machlay's understanding that withdrawal is not a life-threatening experience. He knew of no correlation between withdrawal and an increased risk of suicide.

Machlay noted in the Marshal Service's Form 129, "Individual Custody and Detention Report," that Kelley was a heroin addict. He did not fill out a Form 130, "Prisoner Custody Alert Notice." Viewing disputed facts about the obligation to fill out this form where detainees are undergoing narcotics withdrawal most favorably for the plaintiff, Machlay should have filled out this form, which would have called specific attention to Kelley's status as a heroin addict undergoing withdrawal.

After being processed, Kelley was taken before United States Magistrate Judge Steven Pepe for an initial appearance. He was ordered to be held pending a detention hearing. That afternoon, Kelley was transported to the Wayne County Jail pending a detention hearing the next day.

Form 129, noting that Kelley was a heroin addict, accompanied him to the jail. The jail intake forms do not include information regarding heroin withdrawal. The absence of such information supports a fair inference that Kelley did not disclose or

discuss his condition, or request any assistance, after his arrival at the jail.

On February 2, 2000, Machlay picked up Kelley and other federal prisoners to bring them to the federal courthouse. He noticed that Kelley's color was better and his "demeanor and movement had seemed to have markedly improved from the day before." Machlay asked Kelley if he was feeling better. Kelley said that he was better and thought that the worst was over. Machlay asked Kelley if he felt like eating, and Kelley said that he did. Later that morning he had some food.

At about 2:00 p.m. that afternoon Kelley appeared before United States Magistrate Judge Virginia Morgan for his detention hearing. She learned that Kelley was suffering from heroin withdrawal, and Kelley's attorney asked that he be kept at the Milan Detention Center, a federal detention facility. The attorney understood that Kelley could receive treatment there that would not have been available at the Wayne County Jail. That understanding was mistaken.

Magistrate Judge Morgan asked a Deputy United States Marshal if the Marshals Service could get Kelley to Milan. He told her that they would do so. The Magistrate Judge stated that the Kelley would be detained on the basis of his "medical need for treatment" and need "to be housed at Milan because of heroin withdrawal and his medical needs." In her detention order the Magistrate Judge stated the Kelley "needs to be housed at Milan heroin withdrawal [and] medical needs."

When Kelley was returned to the Marshal's lockup, Machlay was informed of the Magistrate Judge's instruction that Kelley be held in Milan. Machlay consulted with codefendant Deputy Jankowski, the jail liaison deputy. Jankowski, who was responsible for coordinating housing arrangements for federal prisoners, informed Machlay that Milan was not a medical facility, and that it would not accept a detainee unless it would accept him. Jankowski ordered Machlay to have Kelley transported to the Wayne County jail. Machlay understood that the jail had resources for the care of prisoners undergoing narcotics withdrawal.

Neither defendant notified Magistrate Judge Morgan that her instruction to take Kelley to Milan would not be followed. No further notice was given to the Wayne County jail authorities that Kelley was undergoing withdrawal. Staff members from the jail testified that, if they had had a copy of Form 130—the "Prisoner Custody Alert Notice"—indicating that Kelley was suffering from heroin withdrawal, medical care would have been provided to Kelley.

More than two days later, at 11:17 p.m., Kelley was found in his cell with a ligature made from a torn bed sheet. Despite efforts to revive him, he was pronounced dead shortly before midnight.

### Discussion

■ The plaintiff claims that the defendant Deputies were deliberately indifferent to Kelley's serious medical needs, and that, as a result, they proximately caused his suicide. Among the failings attributed to the defendants are: 1) failing to notify the Wayne County jail authorities that Kelley was undergoing withdrawal in either Form 129 or Form 130 or otherwise; 2) disregarding Magistrate Judge Morgan's instruction that Kelley be housed at Milan; and 3) failing to inform the Magistrate Judge that those instructions would not be followed.

Heroin withdrawal is a serious medical condition. *See Morrison v. Washington County*, 700 F.2d 678, 681 (11th Cir.1983) (chronic alcoholic suffering from acute alcohol withdrawal syndrome was "seriously ill."); *Gonzalez v. Cecil County, Maryland*, 221 F.Supp.2d 611, 616 (D.Md.2002) (heroin withdrawal a "serious medical condi-

tion"). The Deputies' knowledge of Kelley's condition was, however, ameliorated somewhat by his statement to Machlay on February 2d, the date of his detention hearing, and more than two days after his arrest, that the worst was over. *See Smith v. LeJeune,* 203 F.Supp.2d 1260, 1273 (D.Wyo.2002) (though county jail nurse observed some symptoms of alcohol withdrawal prior to inmate's suicide, his statement to her that he was feeling fine caused her not to have objective understanding that his condition needed medical treatment).

■■■ Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The standard for a due process claim is, however, the same as with an Eighth Amendment cruel and unusual punishment claim. *Barber v. City of Salem,* 953 F.2d 232, 235 (6th Cir.1992); *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985). To sustain a claim for failure to provide adequate medical treatment, a plaintiff

> must establish that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [plaintiff's] health and safety. *Farmer v. Brennan,* 511 U.S. 825, 835–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Id.* at 837, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811. If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments. *Id.* at 837–38, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811. *Watkins v. City of Battle Creek,* 273 F.3d 682, 685 (6th Cir.2001).

Here the issue is not whether the defendant Deputies failed to provide adequate medical care: as temporary custodians, that was not their responsibility. Thus, cases such as *Liscio v. Warren,* 901 F.2d 274 (2d Cir.1990) (failure to examine prisoner suffering from life-threatening alcohol withdrawal syndrome within three days raised triable issue of deliberate indifference); *Weaver v. Tipton County, Tenn.,* 41 F.Supp.2d 779 (W.D.Tenn.1999), which impose liability for failure to provide *medical treatment* to an inmate undergoing withdrawal, are inapposite.

The issue here is, rather, whether the failure explicitly to notify the Wayne County authorities, who had the resources available to care for Kelley, that he was suffering withdrawal, created a known risk of suicide or other serious harm.

The Deputies' knowledge is assessed on a subjective, rather than an objective basis. *Watkins, supra,* 273 F.3d at 685. Machlay did not know of any correlation between heroin withdrawal and suicide. He cannot be charged with being deliberately indifferent to a risk of harm of which he was not aware.

Similarly, there is no basis for finding that the Deputies knew that if they did not provide a Form 130, or otherwise expressly inform the Wayne County authorities that Kelley was undergoing withdrawal, Kelley would not receive medical treatment. Deputy Machlay had noted Kelley's status as a heroin addict on the Form 129,

and he reasonably could have foreseen that either Kelley's condition and need for medical attention would have been apparent from his appearance, he would have been asked about his need for medical assistance as a routine aspect of the jail's intake procedures, or he would have made his needs known during intake or thereafter.

Likewise, no rational jury could find that it was foreseeable to the Deputies that more than four days after Kelley's arrest, he would commit suicide. Not being conscious of that risk, Machlay could not have been deliberately indifferent toward it when he did not tell the Wayne County authorities that Kelley was undergoing withdrawal.

This is not to say the Machlay may not have been negligent. By hindsight it is possible to say that, had Machlay called specific attention to Kelley's situation, medical care would have been provided and closer attention paid to him, and his suicide may have been averted. But negligence is not the standard. Any negligence on Machlay's part did not rise to the level of deliberate indifference to a known and substantial condition that, if not tended to, created a foreseeable risk of harm to Kelley. *See Williams v. Kelso,* 201 F.3d 1060, 1068 (8th Cir.2000).

■ Failure to comply with Magistrate Judge Morgan's instructions to transport Kelley to Milan does not manifest deliberate indifference to Kelley's medical needs. Had the defendants taken Kelley to Milan, he either would not have been accepted or, if accepted, would not have been treated due to a lack of treatment resources at that institution. Of the two options, the Wayne County jail clearly was the better.

There was no cognizable duty to notify Magistrate Judge Morgan that Kelley was going to Wayne County. Though she may have expected and desired that he be lodged at Milan, her instructions to that effect were based on the misapprehension that better care was more likely to be had there than at the county jail. While it might have been politic to let her know what happened, the Deputies were under no legal obligation to do so. Their failure to do so does not manifest deliberate indifference on their part to Kelley's condition and medical needs.

### Conclusion

For the foregoing reasons, I conclude that no rational jury could find that the defendants violated Kelley's due process rights. It is, accordingly,

ORDERED THAT defendants' motion for summary judgment be, and the same hereby is granted; plaintiff's motion for summary judgment be, and the same hereby is overruled.

So ordered.